## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-14239-CIV-MOORE/MAYNARD

FONTE BARTEE,

      **Plaintiff,**

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

      **Defendant.**

_____/

### REPORT AND RECOMMENDATION

**THIS CAUSE** is before me on Plaintiff's Motion for Summary Judgment [DE 22], Defendant's Motion for Summary Judgment/Response [DE 23], and Plaintiff's Reply [DE 24]. Having reviewed the pleadings and the administrative record, I respectfully **RECOMMEND** that Defendant's administrative decision be **AFFIRMED** for the reasons set forth below.

### BACKGROUND

This case involves a determination of Plaintiff Fonte Bartee's ("Plaintiff's") application for disability insurance benefits filed on December 14, 2019. Plaintiff alleged disability beginning on June 1, 2018, due to anxiety disorder, schizophrenia, scoliosis of the spine, and HPV. R. 15, 17-20, 176.[1]

Plaintiff was 36 on her alleged onset date with a high school education and no past relevant work. R. 22, 72. Plaintiff's application was denied initially on June 3, 2020, and upon

---

[1] A 492-page certified transcript [DE 15] contains the entire administrative record. The transcript index [DE 15 at 29] identifies each document or set of documents by exhibit number and description. I will cite to the transcript as "R." followed by the page number(s) listed on the index and located at the bottom right-hand corner of each page.

reconsideration on July 9, 2020.  R. 15.  At Plaintiff's request, Administrative Law Judge ("ALJ") Jonathan Sprague held a hearing on November 13, 2020.  R. 29.  Plaintiff was represented by Aaron Melamed, Esq.  R. 29.  The ALJ issued an unfavorable decision on December 16, 2020, finding Plaintiff not disabled from December 14, 2019 through the date of the decision.  R. 15-23.

On April 28, 2021, the Appeals Council denied Plaintiff's timely request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1-3.  Plaintiff has exhausted her administrative remedies and now seeks judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g).

## **STANDARD OF REVIEW**

To qualify for Social Security benefits, a claimant must show that she is disabled.  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. §§ 404.1512(a), 416.912(a).  The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

A disability benefits claim follows a multi-layered process before it can be reviewed in federal court.  A claimant first applies to a state agency for disability determinations, 42 U.S.C. § 421(a), after which the claimant is entitled to an evidentiary hearing before an ALJ.  *Heckler v. Day*, 467 U.S. 104, 106–07 (1984).  An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled.  20 C.F.R. § 404.1520(a)(1).  This five-step process determines

if a claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"); (4) can perform past relevant work based on a residual functional capacity ("RFC") assessment; and (5) retains the ability to perform any work in the national economy. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *Hines–Sharp v. Comm'r of Soc. Sec.*, 511 Fed. Appx. 913, 915 n.2 (11th Cir. 2013). If an individual is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).

A claimant may appeal an ALJ's unfavorable decision to an Appeals Council that must review the case and determine if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Heckler*, 467 U.S. at 106-07; 20 C.F.R. § 404.970(a). After completing the foregoing administrative process, a claimant may seek review in federal court. 42 U.S.C. § 405(g); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).

Under governing regulations, the Social Security Administration conducts its "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, social security administrative hearings "are inquisitorial rather than adversarial." *Washington*, 906 F.3d at 1364 (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298,

1304 (11th Cir. 2000)).  "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'"  *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

On review in federal court, the scope of review is limited to determining if (1) substantial evidence supports the Commissioner's findings, and (2) the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  To make this determination, a reviewing court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*

In testing for substantial evidence, a court may not "reweigh the evidence" or "decide the facts anew."  *Winschel*, 631 F.3d at 1178.  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the court must defer to the ALJ's decision even if the evidence preponderates against it.  *Crawford*, 363 F.3d at 1158-59.  However, the court will not "merely rubber-stamp a decision ... [and] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1257 (11th Cir. 2019); *see also Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021) ("Within this narrowly limited role, however, the federal courts 'do not act as automatons' … [w]e retain an important duty to 'scrutinize the record as a whole' and determine whether the agency's decision was reasonable") (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  Remand is appropriate for further factual development

where the record reveals evidentiary gaps that result in unfairness or clear prejudice.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

A reviewing court is also required to review the ALJ's decision to determine if the correct legal standards were applied.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide sufficient reasoning for determining that the proper legal analysis has been conducted, then the ALJ's decision must be reversed.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## THE ALJ'S DECISION

The ALJ in this case proceeded through the five-step analysis as follows:  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 14, 2019, the application date.  R. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder and schizoaffective disorder.[2]  *Id.*  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment in the Listings.  R. 18.  As a predicate to step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:  can understand and remember instructions for simple, routine tasks; can maintain concentration, persistence, and pace to complete simple, routine tasks over and 8-hour periods with scheduled breaks; can interact occasionally with supervisors and co-workers for short periods regarding work matters but cannot have contact with the public and should be in a job requiring only limited or no contact with other; and can adapt to simple routine changes in the workplace and exercise appropriate judgement on simple, routine work matters.  R.

---

[2] The ALJ also noted that Plaintiff had been diagnosed with scoliosis of the spine and claimed to have HPV.  The ALJ found Plaintiff's scoliosis to be non-severe. As for HPV, the ALJ noted that the record contained no objective evidence that the claimant has HPV, therefore that alleged impairment was deemed non-medically determinable.  R. 17-18.

19. At step four, the ALJ found Plaintiff has no relevant work. [3] R. 22. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  R. 22.  Specifically, based upon testimony from the vocational expert, which the ALJ found to be consistent with information in the Dictionary of Occupational Titles, the ALJ determined that Plaintiff could perform the requirements of representative occupations such as: (1) Price tagger/marker (DOT 209.587-034, SVP 2, unskilled, light exertional level, 311,457 jobs nationally); (2) Finisher (DOT 789.687-050, SVP 2, unskilled, light exertional level, 117,561 jobs nationally); and (3) Assembler, small products (DOT 706.684-022, SVP 2, unskilled, light exertional level, 194,186 jobs nationally). R. 23.  Therefore, the ALJ concluded that Plaintiff had not been disabled within the meaning of the Social Security Act from December 14, 201 through the date of the decision.  R. 23.

## DISCUSSION

On appeal, Plaintiff argues that the ALJ failed to adequately account for her mental limitations in the RFC assessment.  Specifically, Plaintiff contends that the ALJ (1) improperly relied exclusively on objective medical evidence rather than properly considering other evidence in the record about the severity of Plaintiff's impairments; (2) improperly considered the medical opinion evidence; and (3) failed to articulate a logical bridge between the medical source opinions, evidence of record, and the ALJ's conclusions.  I will address each of Plaintiff's contentions.

## I.    The ALJ Properly Applied the Pain Standard

Plaintiff contends that she testified to work-preclusive limitations and the ALJ failed to consider her testimony in accordance with the regulations.  DE 22 at 7.  Plaintiff claims she cannot

---

[3] The record shows that Plaintiff previously worked as a cashier at McDonald's and as a medical records clerk at a medical supply company.  R. 35-36.  The ALJ did not consider these jobs to be past relevant work because Plaintiff's earnings were less than the amount needed to be considered substantial gainful activity.  R. 36.

interact with others or even be in the presence of others without an exacerbation of her mental impairments. *Id.* at 9. She also maintains that her memory limitations prevent her from understanding, carrying out, or remembering simple instructions. *Id.* She argues that the ALJ did not meet even the "low bar" of articulating adequate and explicit reasons for discrediting her testimony in this regard. *Id.* at 7. In response, Defendant focuses on the ALJ's analysis of the entire record and argues that substantial evidence supports the ALJ's clearly articulated assessment of Plaintiff's symptoms.

Under governing regulations, a claimant's statements about pain or other symptoms alone will not establish a disability. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about pain or other symptoms will not alone establish that [a claimant is] disabled."). When a claimant attempts to establish a disability through his or her own subjective testimony about pain or other subjective symptoms, the Eleventh Circuit's applicable "pain standard" for evaluating these symptoms requires (1) evidence of an underlying medical condition; and (2) *either* (a) objective medical evidence confirming the severity of the alleged symptoms, *or* (b) evidence that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Id.*; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). *see also Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999); *see also* 20 C.F.R. § 404.1529.

A reversal is warranted if the ALJ's decision contains no evidence of the proper application of the pain standard. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that the ALJ does not have to recite the pain standard word for word; rather, the ALJ must make findings that indicate that the standard was applied). In addition, if the ALJ chooses to discredit the subjective testimony of a claimant's symptoms, the ALJ must clearly articulate adequate reasons for discrediting the claimant's

allegations of disabling symptoms or the record must be obvious as to the credibility finding. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

Here I find that the ALJ properly articulated and applied the pain standard.  The ALJ expressly discussed Plaintiff's hearing testimony and the appropriate legal standard, considered several pieces of medical evidence in the record, and adequately explained his reasons for discounting—at least to some degree—Plaintiff's subjective reports. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011) (quoting *Foote*, 67 F.3d at 1562 ("If proof of disability is based upon subjective evidence and a credibility determination is, therefore, critical to the decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding")).  The ALJ acknowledged that Plaintiff has mental impairments, specifically schizophrenia and anxiety, which cause her moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing herself.  R. 18. Recognizing these limitations, the ALJ fashioned very specific restrictions in the RFC to address Plaintiff's impairments. Specifically, the ALJ found Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but added the following nonexertional limitations:

> [The claimant] can understand and remember instructions for **simple routine tasks**.
>
> The claimant can maintain concentration, persistence, and pace to complete **simple, routine tasks** over an 8-hour period with scheduled breaks.
>
> The claimant can interact **occasionally with supervisors and coworkers for short periods** regarding work matters but **cannot have contact the public and should be in a job requiring only limited or no contact with others**.

> The claimant can adapt to **simple routine changes** in the workplace
> and exercised appropriate judgment on **simple routine matters**.

R. 19 (emphasis added).  Substantial evidence in the record supports this conclusion.

First, the ALJ properly stated the standard governing his evaluation of the intensity, persistence, and limiting effects of Plaintiff's reported symptoms.  R. 20.  Then, the ALJ reviewed Plaintiff's testimony at the hearing November 13, 2020.  Plaintiff testified that she does not remember "hardly anything," she forgets dates, her children's birthdays, and sometimes doctors' appointments.  She has trouble maintaining focus and concentration on what she is doing.  She avoids other people, is afraid of them and believes somebody is going to hurt her.  She hears voices telling her to kill herself or telling her that somebody is going to kill her, she is paranoid, and previously carried a knife for protection but was scared she would hurt someone else.  She showers twice a week, lives in a homeless shelter, and wears the same clothes repeatedly.  On one occasion, staff at the shelter had to take her clothes and launder them because they smelled.  Plaintiff can shop for groceries on her own but does not do anything else that involves other people.

Next, the ALJ discussed the medical record relating to Plaintiff's mental impairments and limitations:

> After careful consideration of the evidence, the undersigned finds
> that the claimant's medically determinable impairments could
> reasonably be expected to cause the alleged symptoms; however, the
> claimant's statements concerning the intensity, persistence, and
> limiting effects of these symptoms are not entirely consistent with
> the medical evidence and the other evidence in the record for the
> reasons explained in this decision.
>
> As for statements about the intensity, persistence, and limiting
> effects of the claimant's symptoms, they are inconsistent because
> the medical evidence documents only mild objective findings.
>
> Regarding the claimant's mental impairments, the undersigned
> notes that the claimant frequently reported having depression and
> anxiety while treating for her impairments.  She also alleged that she

had frequent auditory and visual hallucinations (B11F; B10F). Further, her mental status examinations usually showed that her mood was stable but [she] had an abnormal affect. (B12F/29, 33, 39; B9F/12; B11F). However, her mental status examinations also consistently showed that the claimant had normal findings with her appearance, speech, memory, insight, judgment, thought content, and thought processes (B13F/1-2, 11-12, 15-16, 18; B112F/33, 39; B11F). She was also consistently cooperative and fully oriented upon exam and denied having suicidal ideation (B14F; B13F/1-2, 12, 16, 19; B12F/33; B11F). Moreover, the claimant reported that she no longer has paranoia and no longer sees shadows (B13F/1-2, 12, 16, 19).

R. 20-21. This summation by the ALJ fairly and accurately characterized the cited medical records.

The ALJ also considered Plaintiff's written statements, including the function reports in Plaintiff's claim file, and compared the written statements with Plaintiff's testimony of psychological symptoms. In a function report completed on February 7, 2020, Plaintiff marked "no" when asked whether she has problems getting along with family, friends, neighbors or others. R. 214. When asked how well she gets along with authority figures, for example, police, bosses, landlords, or teachers, Plaintiff responded "Good." R. 215. In another function report completed on March 4, 2020, Plaintiff again states that she has no problems with authority figures and has never been fired or laid off from a job because of problems getting along with other people. R. 238. Regarding her ability to understand and follow instructions, Plaintiff states in both reports that she cannot follow written instructions but says in the second report that she can follow spoken instructions "pretty good," although she has trouble remembering instructions for long. R. 237. Regarding Plaintiff's written statements, the ALJ observed:

The claimant's self-reported activities of daily living are not consistent with her allegations of psychological symptoms. For example, the claimant reported that she is able to pay bills, has no problems with personal care, and has no problem getting along with

> friends and family (B1E; B6E). These activities indicate a higher
> degree of functioning and ability to concentrate than alleged.

R. 21.

The ALJ also considered how Plaintiff's statements about the duration, frequency, and
intensity of her symptoms were generally inconsistent with the medical evidence and with
Plaintiff's self-reports to her providers about her symptom, stating:

> In addition, the claimant's statements regarding the duration,
> frequency, and intensity of her symptoms are generally not
> supported by the medical evidence. At her exams, aside from an
> abnormal affect and poor fund of knowledge, she had normal mental
> status findings (B14; B13F/1-2, 12, 16, 19, 22; B11F; B12F/29, 33,
> 39; B9F/12). Moreover, the claimant alleged hearing voices, but she
> was not observed on exam to be responding to internal stimuli
> (B10F; B13F/1, 11-12, 15-16, 18; B12F/33, 39; B11F).
> Furthermore, the claimant reported that as long as she takes her
> medication, she does not hear any voices (B14F; B12F/15, 29).
> Additionally, treatment notes indicated that her anxiety,
> schizophrenia, and depression is stable or improved (B13F/1-2).
> Furthermore, the claimant's allegations that the treatment she
> received have been ineffective is not consistent with the record. She
> reported doing well and that she benefited from her medication
> (B14F; B12F/15, 29). For these reasons, the undersigned finds that
> the claimant's allegations are generally inconsistent with the record.
> (SSR 16-13p).

R. 21.

My review of the record as a whole shows that the ALJ's evaluation of Plaintiff's subjective
complaints is reasonable and supported by substantial evidence. During the relevant time period,
Plaintiff treated with various providers for mental and medical health services. In 2019, she
received services from Henderson Behavioral Health. On April 26, 2019, the treating provider
noted that Plaintiff was on Haldol 20 mg bid, Cogentin 2 mg bid, and Duloxetine 60 mg. R. 344.
Plaintiff reported that with the medications she had no more paranoia, was not seeing shadows,
her sleep and nightmares had improved, her medicines were well tolerated, and she wanted to

continue in optimum doses.  Plaintiff's established problems of depression, relationship problems, and anxiety were all noted to be stable or improved.  *Id*.  Mental status examination findings were unremarkable – Plaintiff exhibited logical thought process, intact associations, intact orientation, fair recent or remote memory, fair attention and concentration, fair language, fair fund of knowledge, calm mood and fair judgment.  *Id*.  Plaintiff denied auditory or visual hallucinations and suicidal or homicidal ideations.  *Id*.  In July 2019, Plaintiff returned to Henderson Behavioral Health.  All relevant findings were the same and Plaintiff was instructed to continue with medications and follow up again in four months.  R. 343.  Plaintiff did so on November 8, 2019.  Again, Plaintiff was "stable or improved" on medications and she was instructed to follow up in three months.  R. 342.

During that same time period, Plaintiff was treated at Neighborhood Medical Center in Tallahassee, Florida.  On August 23, 2019, Plaintiff went to Neighborhood Medical Center for a new patient visit stating that she needed to establish care to be referred to mental health services.  R. 437.  Plaintiff reported that she was able to care for herself and she lived with others.  R. 439.  She had no sleep disturbances, insomnia, or thoughts of suicide, but she reported feeling sad, empty, and tearful, and the provider noted that she had an abnormal affect.  R. 440-41.  She reported no physical issues and no hallucinations.  Her mental status was described as active and alert, normal mood, good judgment, oriented to time, place and person, recent memory normal, and remote memory normal.  R. 441.  Plaintiff returned to Neighborhood Medical Center the following month on September 6, 2019.  The treatment notes remained the same except her affect was noted to be normal.  R. 435.  On September 13, 2019, Plaintiff returned for a psychiatric evaluation.  R. 428.  She reported memory problems and said *that when she was not taking her medication* she experienced audio and visual hallucinations.  R. 431.  Although Plaintiff exhibited

a "blunted affect," her mood was "stable," thoughts "linear," and speech "slow in rate." *Id*. She

reported having a supportive male friend and living at with others at the Kearney Center. R. 430-

31. Plaintiff denied suicidal or homicidal ideations or plans and was continued on the same

medications. *Id*. At her follow up appointments on October 17, 2019 and January 14, 2020,

Plaintiff's mental status findings remained largely the same. In February 2020, Plaintiff told her

provider that "she is okay as long as she takes the Haldol and Cogentin," but *without the*

*medications* she believes that everyone is out to get her and they have guns and she hears the voice

of her boyfriend when he is not present. R. 417. Plaintiff was instructed to continue taking her

medications, go to the Emergency Room if she has suicidal or homicidal thoughts or plans, and

follow up in three months or as needed. *Id.* Plaintiff's next mental health visit was on May 29,

2020. R. 405. The provider described Plaintiff as having "a blunted affect and stable mood." R.

405. In addition,

> Her speech is slow but she answers questions cooperatively. Her
> thinking is linear and goal directed. She denies hearing voices or
> feeling paranoia while she is taking her meds. She reports that she
> used to hear voices daily before the medication and would hear a
> man's voice threatening to shoot her and sometimes a female. She
> reports being paranoid. She denies any thoughts or plans of harm to
> herself others. She … takes her medication daily as ordered…. She
> reports eating well and sleep is fair.

*Id.* The provider continued Plaintiff on her medications. *Id.*

Plaintiff insists that the ALJ improperly rejected her statements regarding her symptoms

based on objective medical evidence alone and did not consider other evidence in the record. DE

22 at 10. This argument fails, however, because as previously discussed, the ALJ considered the

medical evidence, Plaintiff's written statements, and Plaintiff's activities of daily living in

concluding that Plaintiff's testimony was not entirely consistent with the record. The ALJ also

considered Plaintiff's statements to her providers that she no longer has paranoia, no longer sees

shadows, and does not hear any voices as long as she takes her medication.  R. 21 (citing B13F/1-2, 12, 16, 19; B14; B12F/15, 29)).  I see no error in the ALJ's evaluation of Plaintiff's testimony. *See, e.g., Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling."); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (in addition to objective medical evidence, it is proper for the ALJ to consider use of pain-killers, failure to seek treatment, daily activities, conflicting statements, and demeanor at the hearing).

Plaintiff maintains that the ALJ's failure to mention some aspects of the record demonstrates that the RFC was not supported by substantial evidence.  For example, the ALJ did not mention the fact that the field office representative who interviewed Plaintiff in person noticed an unpleasant smell during the interview.  This is consistent with Plaintiff's claim that she sometimes forgets to wash her clothes or attend to her hygiene.  The ALJ also did not mention Plaintiff's indication that she fears men in particular.  This is consistent with Plaintiff's claim that she has trouble interacting with other people.

Plaintiff is correct that the ALJ did not explicitly address every piece of evidence in his decision.  But he was not required to do so.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.") (internal quotation marks omitted).  The ALJ's decision does not demonstrate a broad rejection of the evidence Plaintiff brings up.  To the contrary, the ALJ's limitation of Plaintiff to simple routine tasks and changes, only occasional, short interactions with supervisors and coworkers, no contact with the public, and only limited or no contact with others

suggests the ALJ largely credited Plaintiff's statements and the evidence Plaintiff mentions. "That the ALJ did not attempt to describe the entirety of [Plaintiff's] medical history does not support [Plaintiff's] argument that the ALJ disregarded certain aspects of the record." *Wheeler v. Apfel*, 224 F.3d 891, 895 n. 3 (8th Cir. 2000). The ALJ adequately explained his reasons for discrediting Plaintiff's subjective testimony. A reviewing court will not disturb a clearly articulated credibility finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (*per curiam*) (citation omitted). Plaintiff's motion for remand on this basis should be denied.

## II.     The ALJ Properly Considered the Medical Opinions and Prior Administrative Findings

For disability cases filed after March 27, 2017, such as this one, an ALJ does not defer or give any specific evidentiary weight to a medical opinion. 20 CFR §§ 404.1520c(a); 416.920c(a). Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff, including the length, frequency, and purpose of the examining relationship; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 CFR §§ 404.1520c(c); 416.920c(a)-(c). Of these factors, supportability and consistency are the most important, and the ALJ must explain its consideration of supportability and consistency in the decision. 20 CFR §§ 404.1520c(b)(2); 416.920c(b)(2). Supportability refers to the extent to which a medical source has articulated support for his or her own opinion, while consistency refers to the relationship between the source's opinion and other evidence in the medical record. "In other words, the ALJ's analysis is directed to whether the medical source's opinion is *supported* by the source's own records and *consistent* with the other evidence of record – familiar concepts within the framework of Social Security litigation." *Cook v. Comm'r of Soc.*

*Sec.*, 2021 WL 1565832, *3 (M.D. Fla. April 6, 2021) (emphasis in original). "Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness." *Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) (*citing*, *inter alia*, 20 CFR § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

The ALJ properly considered the opinion of consultative examiner Dr. Michael Railey, Ph.D., who evaluated Plaintiff in May 2020. Dr. Railey noted that Plaintiff was "acceptably dressed and groomed" for the evaluation, "her hygiene was good, and she was cooperative and responsive throughout the exam." R. 401. Dr. Railey saw "nothing odd about [Plaintiff's] thinking" and Plaintiff "did not evidence any delusional processes." *Id.* Plaintiff's speech was normal in content with flat tone, she was not experiencing any perceptual distortions, her mood was neutral with flat affect, she was fully oriented to person, place, time, and situation, and she had no suicidal or homicidal thoughts or plans. Both her immediate memory and delayed recall were intact during the examination. R. 402. Plaintiff's insight was good, she seemed capable of making appropriate decisions for herself, her attention was intact, she had good concentration, she could successfully address her personal hygiene needs, and "she did not report any difficulties regarding appetite, sleep habits, or bathroom habits." *Id.* Plaintiff demonstrated no cognitive impairment as she "scored a 30 of 30 possible points on the Mini-Mental State Examination." *Id.* Dr. Railey provided the following summary:

> Fonte Barber is a 38-year-old Black female who was examined by
> this clinician on May 21, 2020. Her claim is that she has applied for

disability benefits due to inability to get along with co-workers. While being cooperative, her affective presentation is flat and somewhat fearful during the entire examination. Based on the Claimant's description of her symptoms and when they occurred, the diagnostic evidence appears to support the existence of the disorder listed above. The Claimant is not a danger to herself/ others currently through she will continue to have difficulty in the workplace. Relationships will be difficult for her.

R. 402. Dr. Railey recommended as follows:

Ms Bartee is psychologically stable at this time and from a purely psychological perspective she will experience moderate difficulty in the workplace even with appropriate treatment with medication and psychotherapy.

*Id.*

The ALJ credited Dr. Railey's opinion, finding it both supported and consistent. The ALJ explained:

Psychological consultative examiner, Michael Railey, Ph.D., opined in May 2020 that the claimant will experience moderate difficulty in the workplace. Although this opinion is vague and does not provide a function-by-function assessment, it is supported because Dr. Railey's exam findings show that the claimant was flat and fearful (B11F). Moreover, his exam findings are consistent with objective medical evidence, which show that aside from an abnormal affect and poor fund of knowledge, the claimant had normal mental status exam findings (B14F; B13F/1-2, 12, 16, 19, 22; B11F; B12F/29, 33, 39; B9F/12).

R. 21.

The ALJ also considered, but found less persuasive, the opinions of state agency psychological consultants Robert Hodes, Ph.D and Janet Anguas-Keiter, Psy.D. The consultants recommended that Plaintiff had moderate limitations in all functional domains under the "paragraph B" criteria, except that she had only a mild limitation in understanding, remembering, or applying information. The consultants opined that Plaintiff can understand, learn, and recall simple and detailed tasks; can sustain attendance, effort, and focus across the workday and

workweek; can perform satisfactorily in situations with limited social contact and responsibilities; and can adapt to demands and changes in a routine work setting.

The ALJ rejected the consultants' opinion that Plaintiff could understand and learn *detailed* tasks, finding that to be "internally inconsistent" with their opinion that Plaintiff had moderate limitations in understanding, remembering, or applying information.  R. 22. The ALJ found their recommendations regarding the rest of the paragraph B limitations to be supported, however, "because the consultants note that the claimant's psychotic symptoms have been controlled for greater than a year with medications (B3A; B5A)."  *Id.*  The ALJ also found the consultants' recommendation that Plaintiff can perform satisfactorily in situations with limited social contact and responsibilities to be "vague and thus inconsistent with the overall evidence, which shows the claimant has the most difficulty interacting with others."  *Id.*  Thus, the ALJ rejected the consultants' opinion that Plaintiff "can perform satisfactorily in situations with limited social contacts and responsibilities," and restricted Plaintiff even further to only "occasional interaction with supervisors and coworkers and no contact with the public."  *Id.*  Having reviewed the record as a whole and the evidence cited by the ALJ, I find that the ALJ applied the correct legal standards in evaluating the medical opinions and his determinations in this regard are supported by substantial evidence.

## CONCLUSION

In sum, I am not persuaded by Plaintiff's argument that the ALJ failed to draw an accurate and logical bridge between the evidence and the ALJ's conclusions.  The ALJ's limitation of plaintiff to simple routine tasks, simple routine changes, simple routine matters, only occasional, short interactions with supervisors and coworkers, no contact with the public, and only limited or no contact with others demonstrates that the ALJ largely credited the symptoms Plaintiff reported.

Plaintiff says the ALJ should have restricted her RFC further to no interaction with other people, including supervisors and co-workers.  But the record does not support such a limitation.  Rather, there is substantial evidence in the record demonstrating that Plaintiff can engage in limited interaction.  The record shows Plaintiff attending multiple doctor appointments where she was cooperative, calm, demonstrated logical thought processes, and exhibited fair or good memory, attention, concentration, language, and judgment.  She has never lost a job because of a failure to get along with co-workers, has previously lived with others in a shelter without incident, previously had at least one supportive male friend, and marked "no" on her function reports when asked if she has problems getting along with family, friends, neighbors or others or has problems with authority figures (for example police, bosses, landlords, or teachers).  The ALJ did not ignore evidence concerning Plaintiff's difficulties with social interaction when considering her testimony.  Rather, the ALJ considered such evidence and assessed significant mental restrictions in Plaintiff's RFC to account for that evidence.  Even with those restrictions, the Vocational Expert testified that there are jobs in the national economy that Plaintiff can perform.  Thus, the ALJ's finding that Plaintiff is not disabled is substantially supported.  The ALJ followed the correct legal standards, and the decision is supported by substantial evidence.

Thus, I find that Plaintiff failed at the administrative level to carry her burden to demonstrate that she is disabled or more limited in her RFC than the ALJ found based on her mental impairments.  Accordingly, Defendant's administrative decision is supported by substantial evidence and should be affirmed.   I thus respectfully **RECOMMEND** that Defendant's final administrative decision be **AFFIRMED**; that Plaintiff's Motion for Summary Judgment [DE 22] be **DENIED**; that Defendant's Motion for Summary Judgment [DE 23] be **GRANTED**; and that a final judgment be entered in Defendant's favor.

## <u>NOTICE OF RIGHT TO OBJECT</u>
## <u>AND SHORTENED OBJECTIONS PERIOD</u>

Because this referred matter has been pending for a long time, and to promote judicial economy and finality to the parties, a prompt resolution is required.  As such, I find it necessary and appropriate to shorten the time for any objections pursuant to Southern District of Florida Magistrate Judge Rule 4(a).   Accordingly, the parties shall have SEVEN (7) DAYS from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge K Michael Moore.  *See* 28 U.S.C. § 636(b)(1)(C); S.D. Fla. Mag. J. R. 4(a).   Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**Conversely, if a party does not intend to object to this Report and Recommendation, then that party shall file a Notice of such within five (5) days of the date of this Report and Recommendation.**

**DONE AND RECOMMENDED** in Chambers at Fort Pierce, Florida, this 30th day of August, 2022.

SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE